IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ARLINDA LESLIE, INDIVIDUALLY and as
Next Friend of BLAIR KING AND SETH KING
And BRANDON LESLIE,

    Plaintiffs,

v.                                                           No. Civ. 1:16-cv-1208-JCH-JHR

BNSF RAILWAY COMPANY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on (i) the First Motion for Summary Judgment and Supporting Memorandum (ECF No. 29) filed by Defendant BNSF Railway Company ("Defendant" or "BNSF") and (ii) the Motion for Partial Summary Judgment (ECF No. 37) filed by Plaintiffs Arlinda Leslie, individually and as next friend of Blair King and Seth King, and Brandon Leslie ("Plaintiffs"). The Court, having considered the motions, briefs, supplemental memorandum, response in opposition to the supplemental memorandum, evidence, applicable law, and otherwise being fully advised, concludes that Defendant's motion for summary judgment should be denied and Plaintiffs' motion for partial summary judgment should be granted.[1]

### I.    FACTUAL BACKGROUND

This case arises out of a collision on November 1, 2013, when an automobile in which Plaintiffs Arlinda Leslie, Blair King, and Seth King were riding hit a cow that was on New Mexico State Highway 6. *See* Compl. ¶¶ 7, 14, 17, ECF No. 1-1. On January 14, 2014, Plaintiffs filed a state court lawsuit ("First State Case") for damages for personal injuries sustained by Plaintiffs

---

[1] Although this Court considered the supplemental memoranda, it did not rely on the Settlement Release (ECF No. 51) in deciding the motions for summary judgment.

from the collision against the owner of the cow, Huning Limited Partnership ("Huning LP"), and Dean Nix and Colton Nix, who were allegedly acting as employees or agents of Huning LP (hereinafter, collectively, "Huning Defendants"). *See* Ex. A, ECF No. 29-1 at 1-2. During the litigation, the Huning Defendants argued that the cow entered the highway by jumping over a gate owned and maintained by BNSF. *See* Compl, ¶ 16, ECF No. 1-1.

On October 27, 2016, Plaintiffs filed a separate lawsuit against BNSF in state court for negligence and negligence per se arising from the November 1, 2013 collision ("Second Case"). *See* Compl, ECF No. 1-1. Plaintiffs allege that BNSF owned and operated a railroad right of way across a portion of the ranch property owned and operated by Huning LP and BNSF owned and maintained fences and gates to keep cattle from getting onto its railroad right of way. *Id.* ¶¶ 10-11. Plaintiffs assert that BNSF negligently failed in its duty to take reasonable action to prevent cattle from entering BNSF's right of way and gaining access to Highway 6. *See id.* ¶¶ 23-34. BNSF removed the case to this Court. *See* Notice of Removal, ECF No. 1.

Subsequently, by letter dated November 28, 2016, counsel for BNSF informed counsel for Huning LP of BNSF's belief that Huning LP is "contractually obligated to hold harmless and indemnify BNSF from and against any and all damages arising out of or related to the November 1, 2013 occurrence" based on certain written agreements executed between 1921 and 1957. Def.'s Ex. C at 1, ECF No. 29-3. BNSF further stated in the letter: "As both an insured under all applicable policies of insurance and as a party entitled to indemnification, BNSF hereby further demands that adequate protections and reservations be made under each policy of insurance…. Any settlement negotiated by the Huning Ranch or its carriers must include a full and complete release of BNSF Railway Company." *Id.* at 2. On February 2, 2017, counsel for Huning LP responded by letter and

2

denied that Huning LP is obligated to defend and indemnify BNSF. Def.'s Ex. D at 1, ECF No. 29-4.

On September 28, 2017, Plaintiffs and the Huning Defendants participated in a mediation and reached a written Settlement Agreement in which the Huning Defendants agreed to pay Plaintiffs $3,000,000.00 "upon execution of a release to be prepared by the Defendants." Def.'s Ex. E, ECF No. 29-5. BNSF did not participate in the mediation. Aff. of Paul D. Barber ("Barber Aff.") ¶ 17, ECF No. 34-1. During the mediation, there was no discussion of the other pending litigation against BNSF, *id.* ¶ 7, and the Huning Defendants blamed BNSF for the negligent maintenance of the gate and fence, *id.* ¶ 13.

As relevant here, the Settlement Agreement provided: "This settlement shall resolve all claims, pled or unpled, **between all named or potential parties to the litigation** arising out of an automobile/livestock accident that occurred on November 1, 2013, on New Mexico Highway 6 in Valencia County, New Mexico." Def.'s Ex. E at 1, ECF No. 29-5 (bold added). The caption of the Settlement Agreement listed Arlinda Leslie, individually and as next friend of Blair King and Seth King, and Brandon Leslie as Plaintiffs and "Huning Limited Liability Limited Partnership, Dean Nix and Colton Nix" as Defendants. *Id.* It was signed by counsel for Plaintiffs and "Counsel for Defendants Dean Nix, Colton Nix, and Huning Limited Liability Limited Partnership." *Id.* at 2-3. BNSF did not sign the agreement or agree to provide any compensation to Plaintiffs under the agreement. *See id.*; Barber Aff. ¶ 17.

Following the mediation, the parties to the First State Case exchanged several draft forms of release. Barber Aff. ¶ 18. On December 29, 2017, Plaintiffs filed another state court action against the Huning Defendants as well as a number of insurance companies and law firms representing the Huning Defendants for alleged breach of the Settlement Agreement for failing to

3

prepare settlement documents that complied with the settlement agreement as well as for bad faith and legal malpractice. *See* Defs.' Ex. F, ECF No. 29-6, & Ex. G, ECF No. 29-7.[2]

## II. STANDARD

On a motion for summary judgment, the moving party initially bears the burden of showing that no genuine issue of material fact exists. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial. *Id.* The nonmoving party must go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995). Only disputes of facts that might affect the outcome of the case will properly preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See id.* at 248.

Cross-motions for summary judgment must be treated separately, and the denial of one does not require the grant of the other. *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir.1979)). When considering cross-motions for summary judgment, a court may assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is inappropriate if material factual disputes nevertheless exist. *Id.*

## III. ANALYSIS

---

[2] The Court has included the post-mediation facts for background purposes only to understand some of Plaintiffs' arguments. The Court has not relied on post-mediation facts in resolving the motions.

BNSF argues that the Settlement Agreement released and discharged BNSF from all liability arising from the accident because the parties contemplated releasing BNSF when they used the phrase "all named or potential parties to the litigation." BNSF contends that it is contractually related to Huning LP as its indemnitee and therefore also a released entity according to that relationship. In response, Plaintiffs argue that, although the Settlement Agreement is an enforceable contract, there was no executed release and Defendant's motion can be denied on that ground alone. Additionally, Plaintiffs contend that BNSF was never an intended beneficiary of the Settlement Agreement and/or release, so the Court should deny BNSF's motion for summary judgment and grant Plaintiffs' motion for summary judgment on BNSF's defense. Both parties rely on *Hansen v. Ford Motor Company*, 1995-NMSC-044, 120 N.M. 203, in support. Based on the holding and reasoning of *Hansen*, the Court does not need to determine whether the Settlement Agreement constitutes a release, because even assuming it is, BNSF was not a third-party beneficiary of the Settlement Agreement.

The *Hansen* case involved a general release of liability secured during a settlement of an injured party's claims against the driver of the other vehicle that released "all other persons, firms or corporations liable or, who might be claimed to be liable … on account of all injuries" that resulted from the car accident. *Hansen*, 1995-NMSC-044 ¶ 1, 3. When the injured party sued Ford Motor Company ("Ford") two years later claiming she suffered damages from a faulty air bag, Ford moved for summary judgment, arguing that the general release precluded claims against Ford by the injured party, despite that it neither took part in the settlement negotiations nor contributed any money toward settling the claims. *See id.* ¶¶ 1, 6. The New Mexico Supreme Court held that the purported third-party beneficiary of a release has the burden to prove that it was an intended

5

beneficiary of the release, *id.* ¶ 8, and established a new rule governing the interpretation of boilerplate universal release language:

> we have concluded boilerplate release language like that used here is inherently ambiguous. We hold that a general release raises a rebuttable presumption that only those persons specifically designated by name or by some other specific identifying terminology are discharged…. In the absence of such specific terminology, the person seeking to be discharged must prove by extrinsic evidence that the parties to the agreement actually intended to discharge him or her from liability.

*Id.* ¶ 33.

BNSF argues that the use of the phrase "all named or potential parties to the litigation arising out of an automobile/livestock accident that occurred on November 1, 2013, on New Mexico Highway 6 in Valencia County, New Mexico" is specific identifying terminology referring to BNSF because they had been named parties to litigation arising out of the November 1, 2013 accident. The Court disagrees. The Settlement Agreement contained a caption naming the parties that were part of the First State Case. The phrase "all named or potential parties" therefore does not specifically identify BNSF because it was not a named party in the caption of the Settlement Agreement or a named party in the First State Case, the case being mediated. Moreover, those same parties named in the caption were part of the negotiations and their representatives signed the Settlement Agreement. BNSF nonetheless asserts that if it is not covered by the language then neither are any of the Huning Defendants because they were not specifically named. To the contrary, "named parties" clearly includes the Huning Defendants because they are named in the caption of the agreement and in the signature lines.

Nor is the Court convinced that "potential parties to the litigation" specifically identifies BNSF. At the time the parties signed the Settlement Agreement, BNSF was a named party in separate litigation. The term "potential" means "possible" or "capable of being or becoming." Dictionary.com, http://www.dictionary.com/browse/potential (last visited July 15, 2019). The

phrase does not clearly contemplate BNSF, because it was a known, certain party in separate litigation.

Moreover, the examples of specific identifying terminology used in *Hansen* do not support BNSF's position. The New Mexico Supreme Court gave examples of specific terminology that could operate as a release: (i) to discharge Ford, the parties could have released "the manufacturers and suppliers of the Releasor's car and its component parts;" (ii) to discharge a phantom driver, a release could include "the driver and persons responsible for the operation and maintenance or the blue car," or (iii) to discharge persons responsible for foliage obscuring a stop sign, a release could add "the owners, occupiers, and any other persons responsible for the upkeep or maintenance of the premises on which the shrubs that obscured Releasee's view of the stop sign were growing." *Hansen*, 1995-NMSC-044, ¶ 34. Similar "specific identifying terminology" could have been drafted here to clearly include BNSF such as "and all indemnitees or potential indemnitees of Huning LLLC" or "and all other owners or entities with responsibility for maintaining the gate via which the cow accessed the right of way." No such specific identifying terms were used.

In the absence of specific terminology, BNSF must prove by extrinsic evidence that the parties intended to discharge it from liability. BNSF argues that it has rebutted the presumption of its exclusion through evidence that it had notified Huning LP of its rights to indemnification and that it was a party to separate litigation involving the November 1, 2013 accident. Accordingly, BNSF contends that the phrase "all named or potential parties to the litigation" shows the parties' intent to include BNSF in the release. The Court disagrees.

At the time the settling parties reached their agreement, Plaintiffs' lawsuit against BNSF was pending and all parties were aware of the suit. It is undisputed that the Huning Defendants had been notified that BNSF considered itself an indemnitee of Huning LP. The parties' failure to

include BNSF by name or to use language that unambiguously identified BNSF indicates the contracting parties' intent *not* to include a release of liability for BNSF as part of the Settlement Agreement. BNSF has not met its burden to come forward with extrinsic evidence that shows the intent of the parties to include BNSF in the terms of the Settlement Agreement.

Furthermore, additional undisputed evidence indicates that the settling parties did not intend to include BNSF in the Settlement Agreement or release. BNSF was not present at the mediation and did not participate in settlement discussions. BNSF provided no compensation to Plaintiff under the agreement. Although BNSF asserted it was an indemnitee, Huning LP had notified BNSF that it did not believe BNSF was entitled to indemnification from Huning LP, and during mediation the Huning Defendants blamed BNSF for negligent maintenance of the gate and fence. The evidence does not demonstrate that the Huning Defendants were negotiating on behalf of BNSF or intended to include BNSF in a release.

Based on the undisputed facts and as a matter of law, BNSF was neither specifically designated by name or by specific identifying terminology in the Settlement Agreement/release and BNSF failed to prove by extrinsic evidence that the parties to the agreement intended to discharge BNSF from liability. As the New Mexico Supreme Court stated, when the parties did not intend to release a third party from liability, a "tortfeasor who has taken no part in the satisfaction of a plaintiff's claim should not gratuitously benefit from settlement arrangements undertaken at the time and expense of others." *Hansen*, 1995-NMSC-044, ¶ 26. BNSF is therefore not entitled to summary judgment.

Plaintiffs also moved for partial summary judgment, asking the Court to find that BNSF has not been released from liability and cannot raise the defense as a matter of law. BNSF argues that Plaintiffs' motion is unnecessary because, if the Court disagreed with BNSF and denied

BNSF's motion for summary judgment, that would necessarily mean that the Court has decided, as a matter of law, that the language in the Settlement Agreement does not release BNSF. BNSF asserts that the motion is duplicative, increases litigation costs, and entitles BNSF to Rule 11 sanctions.

This Court's decision denying BNSF's motion for summary judgment also results in a finding of summary judgment for Plaintiffs on BNSF's defense. The same reasoning applies regarding the undisputed facts presented by Plaintiffs. The Court will therefore grant Plaintiff's motion for partial summary judgment on BNSF's defense that the Settlement Agreement released it from liability. Although the arguments were the same in the briefing on both motions, the Court finds that sanctions are unwarranted, because Plaintiffs' motion will be granted on the merits and the ruling helps clarify that the defense cannot be raised at trial.

**IT IS THEREFORE ORDERED** that Defendant's First Motion for Summary Judgment and Supporting Memorandum (**ECF No. 29**) is **DENIED** and Plaintiffs' Motion for Partial Summary Judgment (**ECF No. 37**) is **GRANTED**.

_____
**UNITED STATES DISTRICT JUDGE**