# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

ARLINDA LESLIE, INDIVIDUALLY and as
Next Friend of BLAIR KING AND SETH KING
And BRANDON LESLIE,

    Plaintiffs,

v.                                                No. Civ. 1:16-cv-1208-JCH-JHR

BNSF RAILWAY COMPANY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the *First Federal Rule of Civil Procedure 12(c) Motion for Judgment on the Pleadings* (ECF No. 28) filed by Defendant BNSF Railway Company ("Defendant" or "BNSF"). The Court, having considered the motion, briefs, pleadings, relevant law, and otherwise being fully advised, concludes that Defendant's motion should be granted as to Plaintiffs' negligence per se claim based on N.M. Stat. Ann. § 77-66-16, but should otherwise be denied.

    **I.**     **FACTUAL BACKGROUND**

When considering a motion for judgment on the pleadings, a court should accept as true and construe in the light most favorable to the non-moving party all facts pleaded in the complaint. *Aspenwood Investment Co. v. Martinez*, 355 F.3d 1256, 1259 (10th Cir. 2004).

This case arises out of a collision on November 1, 2013, at around 8:00 p.m., when an automobile in which Plaintiffs Arlinda Leslie, Blair King, and Seth King were riding hit a cow that was on New Mexico State Highway 6 ("Highway 6") after a cross country meet. *See* Compl. ¶¶ 7, 14, 17, ECF No. 1-1. Brandon Leslie, a cross-country coach, was traveling in a bus with members

of the team and came upon his wife in her severely injured condition immediately after the crash. *Id.* ¶¶ 7, 22.

At all relevant locations, Highway 6 runs within a fenced right of way. *Id.* ¶ 8. Near Highway 6, BNSF owns, operates, and maintains railway property and equipment, and at the relevant times, BNSF owned and operated a railroad right of way across a portion of the ranch property owned and operated by Huning Limited Partnership ("Huning") near Highway 6. *Id.* ¶¶ 9-10. BNSF owned and maintained fences and gates to keep cattle and other livestock from getting onto its railroad right of way. *Id.* ¶ 11. BNSF had a contractual duty to maintain its fences near Highway 6 and the Huning ranch. *Id.* ¶ 12.

On November 1, 2013, a cow owned by Huning entered and was present in the right of way of Highway 6 near the intersection of the highway with ATT road. *Id.* ¶ 14. Plaintiff Arlinda Leslie was driving the vehicle in which Blair and Seth King were passengers when her vehicle struck the cow in the roadway. *Id.* ¶ 17. The bus in which Brandon Leslie was riding also subsequently struck the cow in the road. *Id.* ¶ 18. Ms. Leslie suffered severe and significant injuries. *Id.* ¶ 19. Blair and Seth King also suffered injuries from the crash and immediately saw their mother in a severely injured condition. *Id.* ¶¶ 20-21. After Plaintiff filed a state court lawsuit against Huning and others ("the Huning defendants"), the Huning defendants "claimed that they believe that the cow entered the highway by jumping over a gate owned and maintained by BNSF." *Id.* ¶¶ 15-16.

## II. PROCEDURAL HISTORY

On October 27, 2016, Plaintiffs filed a separate lawsuit against BNSF in state court for negligence and negligence per se arising from the November 1, 2013 collision. *See* Compl, ECF

No. 1-1. Plaintiffs assert that BNSF had a duty to prevent cattle from entering the railroad right of way and from there entering the highway. *Id.* ¶ 24. Plaintiffs allege:

> 25. Upon information and belief, the Huning defendants claim that plaintiffs' injuries were caused by defendant BNSF's negligent failure to take reasonable action to prevent cattle or other livestock from leaving the BNSF right of way and gaining access to the right of way for Highway 6.
>
> 26. If, as the Huning defendants claim, their cow got onto the highway right of way because defendant BNSF negligently failed to construct, monitor and maintain the gates and fences between the BNSF right of way and the Huning Limited Partnership ranch, then plaintiffs are entitled to recover from BNSF that portion of their damages found by the jury to be attributable to the fault of defendant BNSF.

*Id.* ¶¶ 25-26. Plaintiffs contend that if BSNF violated N.M. Stat. Ann. § 77-16-16, requiring a railway to construct and maintain livestock fences on the sides of the railroads, and N.M. Stat. Ann. § 66-7-363, making it unlawful to negligently permit livestock to wander or graze upon any fenced highway, then such violations constitute negligence per se. *Id.* ¶¶ 27-30.

BNSF removed the case to this Court based on diversity jurisdiction. *See* Notice of Removal, ECF No. 1. Subsequently, BNSF filed a motion for judgment on the pleadings (ECF No. 28). BNSF contends that Plaintiffs did not state a claim against it because their allegations are that the Huning defendants claim that BNSF is liable, and their pleaded theory of liability depends on BNSF first being found negligent in the state court action against the Huning defendants. *See* Def.'s Mot. 4-5, ECF No. 28. BNSF also argues that the statutory causes of action do not apply under the circumstances because BNSF did not own the cow, and thus owed no duty to prevent it from wandering on the highway. *Id.* at 1. BNSF claims it has no statutory duty to maintain the fence along its railway right-of-way for the benefit of the motoring public. *Id.* According to BNSF, it has no common law duty to fence or maintain fences along its railway, and therefore, Plaintiff failed to allege facts that would support any negligence claim against it. *Id.* at 1-2.

### III. LEGAL STANDARD

A motion for judgment on the pleadings provides a mechanism by which the court may dispose of a case or a claim as a matter of law. *See* Fed. R. Civ. 12(c). The standards governing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) also govern a party's motion for judgment on the pleadings. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). For a party to survive a motion to dismiss, and thus a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient to state a claim for relief. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must allege either direct or inferential allegations on all the material elements of a claim and provide enough factual allegations for a court to infer the claim is plausible. *See Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

### IV. BACKGROUND REGARDING OPEN RANGE LAW

At English common law "it was the duty of the owner of livestock to fence them in, and no duty was placed upon the adjoining landowner to fence them out." *Maguire v. Yanke*, 590 P.2d 85, 88 (Idaho 1978). New Mexico, like many other western states, rejected the English common law rule for livestock management. *Id.* & n.1 (and cited cases). New Mexico historically applied the "open range" rule, which relieved an owner of livestock from a duty to keep his livestock off a public highway. *Dean v. Biesecker*, 1975-NMSC-021, ¶ 5, 87 N.M. 389. Outside of legislatively created "herd law districts," *see* N.M. Stat. Ann. §§ 77-12-1 to -12, a livestock owner had no duty to fence to prevent his cattle from trespassing and was not liable for damage caused by trespassing

animals so long as it was not willful. *See Grubb v. Wolfe*, 1965-NMSC-153, ¶¶ 7-9, 75 N.M. 601.

The New Mexico Supreme Court described the reason for the "open range" rule:

> New Mexico, as part of the western United States, has always been principally a rural area where most of the land is devoted to the raising of livestock. It is not surprising therefore that at an early date, this court announced that in this state, as in most of the other western states, the rule requiring the owner of domestic animals to confine them on his own grounds or be liable for their trespass on the unenclosed lands of his neighbors, was not recognized. Rather, it was held that the owner of livestock could permit his animals, when not dangerous, to run at large without responsibility for their getting on the property of his neighbor.

*Id.* ¶ 8. Because western custom permitted cattle to roam at will for pasture, when new waves of immigrants arrived, policymakers decided that cattle owners should not have to incur the large expense of fencing their land. *See Maguire*, 590 P.2d at 88-89 (quoting *Lazarus v. Phelps*, 152 U.S. 81, 85 (1894)). New Mexico instead adopted the "fence-out" rule requiring land owners to build a fence meeting statutory-specifications to protect their property from roaming livestock. *See* N.M. Stat. Ann. § 77-16-1 (1909); *Board of County Com'rs of County of Bernalillo v. Benavidez*, 2013-NMCA-015 ¶ 6, 292 P.3d 482.

In 1965, the New Mexico Supreme Court had a case before it in which an owner of a calf that was killed when a motorist hit it sued the motorist for negligence. *Grubb*, 1965-NMSC-153, ¶¶ 1-2. The Supreme Court concluded that, in a new age of highways and motor vehicle traffic, considerations of public health and safety required a change to impose a duty on cattle owners to use ordinary care in the control of livestock or otherwise be liable for injuries to motorists resulting from collisions with animals due to negligence in permitting them to be in the highway. *Id.* ¶¶ 10-11. It therefore concluded the trial court did not err in instructing that the plaintiff calf owner had a duty to use ordinary care for the safety of his property. *Id.* ¶ 15.

In direct response to the *Grubb* decision, the New Mexico Legislature in 1966 passed Section 66-7-363(C) providing that owners of livestock ranging in pastures through which

"unfenced roads or highways pass" are not liable for damages by reason of injury or damage to persons or property caused by collisions of vehicles and livestock, unless the owner "is guilty of specific negligence other than allowing his animals to range in said pasture." *Benavidez*, 2013-NMCA-015, ¶ 7 (quoting N.M. Stat. Ann. § 66-7-363(C)). The Legislature also shifted the responsibility for building and maintaining fences along state highways from cattle owners with property adjacent to highways to the Highway Department. *See Fireman's Fund Ins. Co. v. Tucker*, 1980-NMSC-082, ¶ 12, 95 N.M. 56 (construing N.M. Stat. Ann. § 30-8-13(B) (enacted by Laws 1966, ch. 44 s 1)). Section 30-8-13(B)(1) imposed a duty on the Highway Department to "construct, inspect regularly and maintain fences along all highways under its jurisdiction." *Lerma by Lerma v. State Highway Department of New Mexico*, 1994-NMSC-069, ¶ 5, 877 P.2d 1085 (quoting NMSA 1978, Section 30-8-13(B)(1) (Repl. Pamp. 1984)). The purpose of § 30-8-13(B)(1) was to protect the motoring public by constructing and maintaining fences to prohibit livestock from entering the highway. *Id.* ¶ 6. With this background in mind, the Court will turn to the issues in this case.

## V. ANALYSIS

A federal district court sitting in diversity applies state law in a manner that the same result would be reached in state court. *Butt v. Bank of Am., N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007). State law as announced by the highest court in the State must be followed. *C.I.R. v. Bosch's Estate*, 387 U.S. 456, 465 (1967). If there is no decision by the highest court, then federal courts must apply what they find to be the state law after giving due regard to rulings of other courts of the State. *Id.* "Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007) (quoting *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003)).

### A. Whether Plaintiffs assert a claim contingent on a state court finding of liability

BNSF argues that Plaintiff's complaint asserts claims by the Huning defendants, and that the Huning defendants, not Plaintiffs, are making claims against BNSF. Plaintiffs respond that the complaint meets Rule 8(a)'s notice requirements and was purposely pled in consideration of the comparative fault between the Huning defendants and BNSF, and they intended to consolidate the actions in state court. Pl.'s Resp. 3, ECF No. 31.

Although Plaintiffs' complaint is drafted to assert that the Huning defendants are making claims of BNSF's liability, the inferences indicate that Plaintiffs themselves are now making the same claims that BNSF is liable for their injuries. To the extent that the inference cannot be so fairly read, the proper remedy is to grant leave to amend to clarify that Plaintiffs are asserting that BNSF is comparatively liable.

In addition, BNSF contends that Plaintiffs' allegations are premised on BNSF being found liable first in the state court action against the Huning defendants. BNSF relies on paragraph 26 of the complaint in which Plaintiffs claim they "are entitled to recover from BNSF that portion of their damages found by the jury to be attributable to the fault of defendant BNSF." BNSF asserts the "jury" means the "state court jury." The Court disagrees that the complaint makes the claims against BNSF contingent on another state court jury's decision. Rather, construing inferences in Plaintiffs' favor, they are asserting that the jury in this case must decide the comparative fault of BNSF and apportion damages.

### B. Negligence and negligence *per se*

"Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the

breach being a proximate cause and cause in fact of the plaintiff's damages." *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 6, 73 P.3d 181. "A duty is a legal obligation to conform to a certain standard of conduct to reduce the risk of harm to an individual or class or persons[.]" *Cottonwood Enterprises v. McAlpin*, 1991-NMSC-044, ¶ 10, 111 N.M. 793 (quoting *Baxter v. Noce*, 107 N.M. 48, 51, 752 P.2d 240, 243 (1988)). "Existence of a duty is a question of policy to be determined with reference to legal precedent, statutes, and other principles comprising the law." *Id.* The tort of negligence must be based on a duty other than one imposed by a contract, in which case the proper action is a breach of contract claim. *See id.* ¶ 11. New Mexico recognizes a duty to all persons to use ordinary care for the safety and property of others. *Oakey, Estate of Lucero v. May Maple Pharmacy, Inc.*, 2017-NMCA-054, ¶ 23, 399 P.3d 939 (quoting UJI 13-1604 NMRA).

"In order to hold a defendant liable under a claim of negligence per se, the defendant must be shown to have violated a specific statute." *Parker v. E.I. DuPont de Nemours & Co., Inc.*, 1995-NMCA-086, ¶ 40, 121 N.M. 120. To determine whether the doctrine of negligence per se applies, a court looks at four elements: (1) there must be a statute prescribing certain actions or defining a standard of conduct, either explicitly or implicitly; (2) the defendant must violate the statute, (3) the plaintiff must be in the class of persons sought to be protected by the statute, and (4) the harm or injury to the plaintiff must generally be of the type the legislature through the statute sought to prevent. *Apodaca v. AAA Gas Co.*, 2003-NMCA-085, ¶ 43, 73 P.3d 215 (quoting *Archibeque v. Homrich*, 88 N.M. 527, 532, 543 P.2d 820, 825 (1975)).

### 1. Common law negligence

BNSF asserts that under the common law a railroad had no duty to fence their tracks against livestock, and no statute creates such a duty to benefit the motoring public. BNSF argues that, because the only statute requiring it to maintain fencing is for the benefit of livestock owners and

damages are only for the value of damaged livestock, there is no duty by BNSF to the general motoring public. Plaintiff responds that BNSF, like any citizen or corporation, has a duty to exercise ordinary care for the safety of others.

Although BNSF, like all persons, is subject to an ordinary standard of care, the question before the Court is one of duty, specifically whether BNSF has a duty to Plaintiffs as members of the motoring public to exercise ordinary care in the maintenance of the gate to keep livestock from entering the highway. *Cf. Lerma*, 1994-NMSC-069, ¶ 9-11 (after rejecting argument that department had duty to maintain fence merely because it erected one, holding "the determinative issue is whether the Department has a duty to exercise ordinary care in the maintenance of its highways"). BNSF argues that it does not have a common law duty, relying on *Hittson v. Chicago, R. I. & P. Ry. Co.*, 1939-NMSC-004, ¶ 2, 43 N.M. 122 (1939). *Hittson* involved a suit to recover damages for the killing of a mare by a train. *Id.* ¶ 1. The New Mexico Supreme Court stated, "Railroad companies are not bound by any rule of the common law to fence their tracks against live stock, and failure to do so in the absence of a statute is not negligence." *Id.* ¶ 2. Subsequently, the New Mexico Court of Appeals reiterated, "In the absence of statute, there is no duty upon a railroad to fence its tracks or right of way for any purpose. Consequently, the failure to do so is not negligence as to persons who come upon the tracks at a point where there is no fence and are injured." *Ruiz v. Southern Pac. Transp. Co.*, 1981-NMCA-094, ¶ 90, 97 N.M. 194.

The Court agrees with BNSF that New Mexico common law creates no duty to restrain cattle within fences, and that any duty must arise by statute. *See Hittson*, 1939-NMSC-004, ¶ 2, *Ruiz*, 1981-NMCA-094, ¶ 90. *See also Rodriguez v. Sandhill Cattle Co., L.P.*, 427 S.W.3d 507, 508-09 (Tex. Ct. App. 2014) ("[N]o one questions that in Texas there exists no common law duty to restrain cattle within fences…. Rather, they agree that the duty underlying Rodriguez' complaint

9

is a creature of statute…. [T]he duty being a creature of statute, its scope is defined by the statute creating it."). This case, however, does not involve a duty to fence a section of tracks; instead, it involves an already fenced right of way and the duty to maintain fences and gates owned by BNSF. The Legislature created different statutes and duties depending on whether land is fenced or open-range. Accordingly, the Court will turn to the statutes upon which Plaintiffs rely, N.M. Stat. Ann. § 77-66-16 and § 66-7-363.

### 2. Section 77-16-16. Railroads; fencing of lines; damage.

Section 77-16-16 provides:

> Every railroad … shall … erect and thereafter maintain fences on the sides of the railroad … suitably and amply sufficient *to prevent cattle … from getting on the railroad …. If any railroad fails to construct and maintain fences and cattle guards as directed in this section, the railroad shall be liable to the owner for all damages resulting from injury or death caused to any livestock*, including reasonable attorney fees, on order of the court should legal proceedings be commenced by the owner.

N.M. Stat. Ann. § 77-16-16(A) (italics added). In construing this statute, the New Mexico Supreme Court explained that the statute created a duty for the benefit of a class of the public, authorizing a common law action to recover damages for the killing of livestock proximately resulting from the failure to fence as the statute requires, even in the absence of a prescribed remedy. *Hittson*, 1939-NMSC-004, ¶ 2. It noted, however, that where the "statute creates a new right for protection of the public where none existed before and at the same time provides an adequate remedy for enforcement of the right created, the remedy thus afforded is exclusive." *Id.*

BNSF argues that Section 77-16-16 was enacted to protect livestock, not to protect drivers from livestock-automobile collisions. BNSF contends that the statute was enacted in 1889 when there was not even a motoring public to protect. BNSF thus asserts that the negligence per se claim based on § 77-16-16 must be dismissed because Plaintiff is not in the class of persons sought to be

protected by the statute. Plaintiffs in their response did not directly address the arguments made by BNSF regarding a negligence per se claim based on § 77-16-16.

The plain language of § 77-16-16 establishes that the owners of livestock injured by a train were the class of persons sought to be protected by the statute. Plaintiffs have not demonstrated that they are in the class of persons sought to be protected by the statute or that the harm or injury to them is generally of the type the legislature through the statute sought to prevent. Accordingly, Plaintiffs have failed to state a negligence per se claim based on a violation of § 77-16-16. *Cf. Lerma*, 1995-NMSC-069, ¶¶ 5-7 (concluding that State Highway Department did not have statutory duty to maintain fences for protection of pedestrians because § 30-8-13 was limited to duty to construct fences to keep livestock from entering highway); *Long v. Daly*, 156 P.3d 994, 997-98 (Wyo. 2007) (holding that similar Wyoming statute requiring railroad corporations to construct fencing to protect livestock owner from harm did not impose duty of care on railroad to protect plaintiff motorist from harm from cow that had entered highway through fence). *See also Missouri, O.&G. Ry. Co. v. Brown*, 148 P. 1040, 1041 (Oka. 1915) (holding that railroad had no liability to adjacent landowner for failing to maintain fence that allowed livestock owned by third-party to trespass on adjacent land, because statute requiring railroad to build and maintain fence is not broad enough to cover such damages sustained and railroad's liability is only for animals killed by reason of failure to construct fence).

### 3. Section 66-7-363. Animals on highway.

As relevant here, Section 66-7-363, Animals on highway, states: "It is unlawful for any person negligently to permit livestock to wander or graze upon any fenced highway at any time…." N.M. Stat. Ann. § 66-7-363(B). BNSF argues, relying on *Mitchell v. Ridgway*, 1966-NMSC-265,

77 N.M. 249, that § 66-7-363(B) creates a duty only for owners of the livestock, and therefore Plaintiffs failed to state a claim against BNSF for negligence per se based on § 66-7-363(B).

Following enactment of § 66-7-363(C) reestablishing the open range law, the New Mexico Supreme Court decided *Mitchell v. Ridgway*. In *Mitchell*, the plaintiff's automobile hit a horse on a state highway, and he sued the owner of the horse for negligence and negligence per se for failing to restrain and confine his horse to his premises and allowing it to roam onto the highway. *Mitchell*, 1966-NMSC-265, ¶¶ 2-4. The New Mexico Supreme Court reversed the trial court's dismissal of the negligence count, concluding that "the owner of livestock has a duty to care for his property as a reasonable man" and to restrain livestock and keep them off fenced highways to avoid collisions with the motoring public. *Id.* ¶ 3. The plaintiff also had a negligence per se claim in part based on N.M. Stat. Ann. § 64-18-62, the predecessor to § 66-7-363, which made it "unlawful for any person to permit live stock to wander or graze upon any fenced highway at any time." *Id.* ¶¶ 4-5 (quoting N.M. Stat. Ann. § 64-18-62(b)). The *Mitchell* court stated that the statute's purpose is to protect the motoring public. *Id.* ¶ 6. It thus determined that the trial court erred in dismissing the negligence per se cause of action. *Id.* Although *Mitchell* establishes the duty of livestock owners on fenced highways to the motoring public, the case did not address whether non-owners are subject to the statute and is of limited utility here to determine the statute's scope.

BNSF relies also on *Steed v. Roundy*, a case in which an insurer sued the owner of a horse after the insured motorist collided with the horse on a highway. *See Steed v. Roundy*, 342 F.2d 159, 160 (10th Cir. 1965). The Tenth Circuit construed § 64-18-62(b), *id.*, which as originally adopted in 1953 did not contain the phrase "negligently" (it was inserted by a 1965 amendment), *see Tapia v. McKenzie*, 1971-NMCA-128, ¶ 30, 489 P.2d 181 (Sutin, J. (specially concurring)). Nevertheless, the Tenth Circuit construed the term "permit" to require "that negligence *of the*

12

*owner* must be established before liability would attach." *Steed*, 342 F.2d at 160 (italics added). BNSF relies on this language to limit the application of § 66-7-363(b) to owners of livestock. As with *Mitchell*, however, the court was considering the negligence of the owner in the case, so the Tenth Circuit's statement that the negligence *of the owner* must be established is limited to the facts of the case.

This Court has found no New Mexico case law construing the meaning of § 66-7-363's phrase "any person" to persons other than owners of livestock. Without an on-point New Mexico case directing this Court's decision, the Court must predict what the Supreme Court of New Mexico would do by turning to the statutory language and history to determine § 66-7-363(B)'s scope. *See Quynh Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 37, 147 N.M. 583 ("The first and most obvious guide to statutory interpretation is the wording of the statutes themselves.") (quoting *DeWitt v. Rent–A–Center, Inc.*, 2009–NMSC–032, ¶ 29, 146 N.M. 453). When statutory language is clear and unambiguous, courts should give effect to that language. *Id.* If, however, there is doubt to the meaning of statutory terms, courts may look to legislative intent, but otherwise, they should not. *Perea v. Baca*, 1980-NMSC-079, ¶ 19, 94 N.M. 624. If the language of a statute leads to an absurd result, a court should construe it to avoid such a result. *State v. Gutierrez*, 1993-NMCA-058, ¶ 3, 115 N.M. 551.

Section 66-7-363 uses the general term "any person" rather than the phrase "owner of livestock." Plaintiffs argue that the plain meaning of the statute broadly applies to anyone who permits livestock to wander or graze upon a fenced highway. Section 66-7-363's predecessor statute, N.M. Stat. Ann. § 64-18-62(b), likewise used the phrase "any person." After enacting § 64-18-62(b), the New Mexico Legislature passed a separate statute making it "unlawful *for the owner or custodian of live stock* to negligently permit or allow his live stock to run at large upon

13

any part of the public highways of this state which are fenced on both sides." *Steed*, 342 F.2d at 160 (quoting N.M. Stat. Ann. § 40-23-4(B)) (emphasis added). The New Mexico Legislature thus knew how to limit the application of statutes to owners or custodians of livestock when it wished. Moreover, when it amended the Animals on highway statute to include subsection C's protection for "Owners of livestock," the Legislature did not alter the language of subsection B. Had the Legislature intended to limit § 66-7-363(B) to owners of livestock, it could have done so with clear language, as it has in other subsections and statutes.[1]

BNSF nonetheless urges this Court to consider the criminal statute related to the same subject matter, N.M. Stat. Ann. § 30-8-13 (previously codified as NMSA 1953, Section 40A-8-10), to conclude that § 66-7-363 applies only to owners or those with authority to control livestock. Section 30-8-13(D) made it a petty misdemeanor to unlawfully permit livestock upon a public highway. Subsection A defined the crime as "consist[ing] of any owner or custodian of livestock negligently permitting his livestock to run at large upon any part of a public highway which is fenced on both sides." N.M. Stat. Ann. 30-8-13(A) (1967). That the criminal statute linked criminal liability only to owners or custodians of livestock does not necessarily shed light on whether the Legislature intended a greater scope of class of persons subject to the duty imposed in § 66-7-363.

Yet, BNSF asks the Court to consider recent amendments to § 30-8-13 to construe the Legislature's intended meaning in § 66-7-363. In 2018, the Legislature repealed § 30-8-13 and added subsection (D) to § 66-7-363: "A person who violates the provisions of this section is guilty of a penalty assessment misdemeanor." N.M. Stat. Ann. § 66-7-363(D) (2018). BNSF argues that the Legislature, in taking § 30-8-13's penalty provision and adding it to § 66-7-363, revealed its

---

[1] Other state legislatures have used such limiting language. *See*, *e.g.*, *Lilley v. Cedar Springs Ranch Inc.*, 405 P.3d 817, 822 (Utah Ct. App. 2017) (construing duty under section 41-6a-407(1)(a) of Utah Code, which stated: "A person who owns or is in possession or control of any livestock may not willfully or negligently permit any of the livestock to stray or remain unaccompanied on a highway[.]")

14

understanding that § 66-7-363(B) applied only to owners and custodians of livestock, as previously limited in § 30-8-13(A). The Court concludes, however, that the 2018 amendment is of minimal help to resolving the legislative meaning of "any person" in the statute in place in 2013 when the events at issue occurred. At the time of the collision here, § 66-7-363 did not impose criminal penalties. Moreover, the failure of the Legislature to amend § 66-7-363(B) to incorporate § 30-8-13(A)'s limitation to "any owner or custodian of livestock" also suggests the opposite of what BNSF argues – that the Legislature did not intend to limit the scope of § 66-7-363(B) to only owners or custodians of livestock.

BNSF next argues that a broad reading of "any person" and "permit," as Plaintiff urges, leads to absurd results in imposing civil (and now criminal) liability and could not be what the Legislature intended. BNSF conjures a hypothetical in which any motorist who witnessed someone else's livestock in the highway would be guilty under the statute for failing to act to contain the livestock, and thus, for having permitted the livestock on the highway.

The Court will thus turn to the meaning of "permit" to see if the use of that term indicates a more limited class of persons subject to the statutory duty. The common meaning of the term, "permit" means "1: to consent to expressly or formally … 2: to give leave … 3: make possible …: to give an opportunity." *Permit*, Merriam-Webster, https://www.merriam-webster.com (last visited September 4, 2019).[2] Although the New Mexico appellate courts have not addressed the scope of the term "permit" in § 66-7-363(B), the Court has found some guidance on the term in the case law of other states.

In *Cooper v. Eberly*, the Kansas Supreme Court construed its "running at large" statute to require some degree of negligence in permitting horses to run at large. *See* 508 P.2d 943, 951-52

---

[2] *See Quynh*, 2010-NMSC-009, ¶¶ 38, 43 (turning to lay dictionary to determine plain meaning of words used in statute).

(1973). It explained: "Suffering or permitting an animal to go at large implies knowledge, consent, or willingness on the part of the owner, or such negligent conduct as is equivalent thereto; but does not comprehend a case where animals escape from their owner, after due precaution to secure them has been taken, and without fault or negligence on his part, and he makes immediate and suitable efforts to recover them." *Id.* at 952 (quoting *Clark v. Carson*, 188 Kan. 261, 362 P.2d 71). Although the *Cooper* case involved a negligence claim against the owner of the horse, its analysis suggests that the term "permit" requires some degree of negligent conduct *before* the livestock escapes, in other words, negligence in failing to secure the animal. This temporal limitation on the term "permit" would avoid the hypothetical scenario that would attach civil liability on anyone who happens upon livestock already on a highway and does nothing to contain it.

This construction finds support in the case of *Rose v. Ben C. Hebert Heirs*, in which the Texas Court of Appeals examined the meaning of "permit" in a Texas statute providing a person may not permit certain animals to run at large in certain designated areas. *See* 305 S.W.3d 874, 879 (2010). The case arose from a motor vehicle collision with a bull and the occupants sued the landowners who owned the property from which the bull escaped, asserting that they negligently failed to ensure gates were locked and to install cattle guards. *Id.* at 875. The landowners, however, did not own the bull; another individual leased the pasture. *Id.* at 876. The parties did not dispute that there was no duty under Texas common law to restrain livestock, so the plaintiffs relied on Texas statutes creating personal duties to restrain livestock. *See id.* at 876. In construing the term "permit," the Texas Court of Appeals looked to the dictionary definition of the term and concluded that the legislature likely intended it to mean "to consent to expressly or formally" or "to give leave." *Id.* at 880-81. It rejected a meaning of any person who "made possible" the escape of cattle because it too broadly captured persons the legislature likely did not intend, such as a manufacturer

16

of barbed-wire when a strand rusts and breaks, thereby making possible a cow's escape. *See id.* In granting summary judgment to the landowners, the *Rose* court noted that there was no evidence in the record to support a claim that the landowners "permitted" the bull to roam at large, noting, among other things, that there was no evidence the landowners were aware that cattle had previously escaped from pastures they leased and there was "no evidence the pasture's fence and its gate were not fit for the ordinary uses for which they were intended." *Id.* at 881.

Although in *Rose* the landowners were neither the owners nor custodians of the cattle, the Texas Court of Appeals did not more simply hold that non-owners/non-custodians could never as a matter of law have a duty arising under the animals-at-large statute. Instead, the court looked at the record to determine if there were supporting facts to show the landowners permitted the bull to roam at large.

Relying on the plain statutory language, the legislative history, and case law from other states with similar statutes, the Court is not convinced that the New Mexico Legislature intended to construe the meaning of "any person" to encompass only livestock owners and livestock custodians. There are sound reasons for why the Legislature may have used the broad term "any person" to prevent carelessness in containing livestock in scenarios such as the *Rose* case and others as well. For example, to take another hypothetical, BNSF would remove from the statute's scope a motorist who stops, opens a gate containing cows, and leaves the gate open. It would not be absurd or unreasonable to legislate against such negligent conduct. The Legislature chose the phrase "any person," and the Court must give effect to that language in the absence of absurd or unreasonable results. As discussed *supra*, the absurdity BNSF raises can be avoided by a more limited construction of "permits" to giving opportunity for the livestock to wander upon any fenced highway in the first instance. For all the foregoing reasons, the Court concludes that § 66-7-363(B)

17

by its language imposes a duty on "any person," not just owners or custodians of livestock, not to negligently permit livestock to wander or graze upon a fenced highway.

Plaintiffs allege in their complaint that BNSF owned and maintained fences and gates near Highway 6 and BNSF had a contractual duty to maintain its fences. Compl. ¶¶ 11-12. Plaintiffs assert that BNSF's negligent maintenance of a gate it owned and maintained permitted the cow to enter the railroad right of way and then Highway 6. *See id.* ¶¶ 16, 23-26. Plaintiffs' complaint alleges that BNSF undertook a contractual duty to maintain the fence, and by doing so, BNSF became subject to the statutory duty to not negligently permit livestock to wander on a fenced highway. *See* Compl. ¶¶ 11-12, 16, ECF No. 1-1. The allegations and inferences drawn therefrom state a claim that BNSF negligently permitted a cow to wander upon a fenced highway by jumping over a negligently maintained gate owned by BNSF.

Viewing the complaint favorably to Plaintiff, as it must, the Court finds that Plaintiffs have met the first and second elements for negligence per se – that § 66-7-363(B) is a statute prescribing certain actions or defining a standard of conduct applicable to BNSF under the circumstances of this case and BNSF violated the statute. Moreover, in light of *Mitchell*'s statement that that the purpose of § 64-18-72(b), § 66-7-363(B)'s predecessor, is "protection of the motoring public," *Mitchell*, 1966-NMSC-265, ¶ 6, Plaintiffs were in the class of persons sought to be protected by § 66-7-363(B) and the injuries they suffered were the type the Legislature sought to prevent. Accordingly, Plaintiffs have stated a claim for negligence per se based on § 66-7-363(B).

BNSF nonetheless argues based on *Steed v. Roundy* that, even if this statute applies to BNSF under the circumstances, a violation of § 66-7-363 is not a claim for negligence per se because Plaintiffs must establish negligence. *See* Def.'s Mot. 8-9, ECF No. 28. BNSF contends

that § 66-7-363 does not support a negligence per se claim because the statute does not create a standard of care distinct from ordinary care.

BNSF is correct that § 66-7-363 requires as an element that a person act "negligently." N.M. Stat. Ann. § 66-7-363. It is also true that to "support a claim for negligence per se (distinct from a negligence claim), 'the regulation or statute at issue must specify a duty that is distinguishable from the ordinary standard of care[,]' rather than 'impose general duties[.]'" *Oakey, Estate of Lucero*, 2017-NMCA-054, ¶ 21. New Mexico Uniform Jury Instruction 13-503 applies to "Livestock on fenced highway" and instructs:

> There was in force in this state, at the time of the occurrence in question, a certain statute which provided:
>
> > "It is unlawful for any person negligently to permit livestock to wander or graze upon any fenced highway at any time".
>
> If you find from the evidence that the defendant violated this statute in the specific manner claimed by the plaintiff, then *you are instructed that such conduct constituted negligence as a matter of law*."

N.M. U.J.I. 13-503 (emphasis added). The use notes for the instruction clarify that "it is necessary that the plaintiff prove specific negligence" and that the jury be instructed with the usual tort instructions explaining negligence, ordinary care, and duty with the instruction. *Id.*, Directions for Use. Plaintiffs must therefore establish that BNSF "negligently" permitted livestock to wander or graze upon Highway 6 before the jury can find that BNSF's conduct was negligence as a matter of law.

Despite having an element of negligence within the statute, the New Mexico Uniform Jury Instructions nonetheless use a "negligence as a matter of law" instruction. This statute, while incorporating a negligence standard, also sets forth a specific duty – to not permit livestock to wander or graze on a fenced highway. Given UJI 13-503, the Court will not dismiss Plaintiff's

19

negligence per se claim at this time. The Court will permit both the negligence and negligence per se claims to survive dismissal based on the duty BNSF owed to Plaintiffs arising from § 66-7-363(B).

**IT IS THEREFORE ORDERED** that Defendant's *First Federal Rule of Civil Procedure 12(c) Motion for Judgment on the Pleadings* (**ECF No. 28**) is **GRANTED IN PART AND DENIED IN PART** as follows:

1. Defendant's request for judgment as a matter of law on Plaintiffs' negligence per se claim based on N.M. Stat. Ann. § 77-66-16 is **GRANTED**.

2. Defendant's request for judgment as a matter of law on Plaintiffs' negligence claim and negligence per se claim based on N.M. Stat. Ann. § 66-7-363 is **DENIED**.

3. The Court will allow Plaintiffs **FOURTEEN (14) DAYS** to amend their complaint to clarify that Plaintiffs are asserting claims that BNSF is comparatively liable, if Plaintiffs can do so without violating Rule 11.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**